ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CARMEN LYDIA ORTIZ DE JESÚS<br><br>Apelada<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE CAROLINA, ET ALS<br><br>Apelante | KLAN202200742 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2019CV01025<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente el Juez Sánchez Ramos, el Juez Rivera Torres y la Jueza Martínez Cordero.[1]

*Martínez Cordero, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de diciembre de 2023

Comparece Campo Rico Memorial y su aseguradora, Cooperativa de Seguros Múltiples (en adelante, los apelantes) mediante una *Apelación* presentada el 16 de septiembre de 2022, para solicitarnos la revisión de la *Sentencia* dictada y notificada el 15 de julio de 2022,[2] por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, TPI). En esta, el foro primario declaró *Ha Lugar* la *Demanda* sobre daños y perjuicios instada por la señora Carmen Lydia Ortiz De Jesús (en adelante, apelada y/o señora Ortiz De Jesús) y, en consecuencia, imputó a los apelantes la totalidad de los daños reclamados.

Por los fundamentos que expondremos a continuación, *se confirma* la sentencia apelada.

I.

El 15 de marzo de 2019, la señora Ortiz De Jesús presentó una *Demanda* sobre daños y perjuicios contra el Municipio

---

[1] Véase, Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución del Hon. Carlos G. Salgado Schwarz.
[2] Apéndice de la parte apelante, a las págs. 1-18.

Número Identificador

SEN2023_____

Autónomo de Carolina, MAPFRE PRAICO Insurance Company (en adelante, MAPFRE), Funeraria Campo Rico Memorial, Cooperativa de Seguros Múltiples de Puerto Rico, la Autoridad de Acueductos y Alcantarillados (en adelante, AAA) y otros demandados de nombre desconocido.[3] En esta alegó que el 5 de agosto de 2018, la apelada salió de la Funeraria Campo Rico Memorial, ubicada en el Municipio de Carolina, a guardar un libro en su vehículo, el cual se encontraba estacionado en esas inmediaciones. Arguyó que, en ese instante, tropezó con un desnivel ubicado en el área de la acera o el estacionamiento de la funeraria en el cual se encontraba un registro de agua por debajo del pavimento. La señora Ortiz De Jesús alegó que, como consecuencia de este tropiezo, sufrió una caída la cual le provocó daños.

Ante este escenario, señora Ortiz De Jesús solicitó el pago de ciento cincuenta mil dólares ($150,000.00) por los daños sufridos; cincuenta mil dólares ($50,000.00) por concepto de angustias mentales y una cantidad no menor a diez mil dólares ($10,000.00) por los gastos relacionados a deducibles, terapias, medicinas, entre otros.

En respuesta, el 24 de junio de 2019, los apelantes presentaron su *Contestación a la Demanda*.[4] Asimismo, el 27 de junio de 2019, el Municipio de Carolina presentó su *Contestación a Demanda*.[5] Del mismo modo, el 9 de agosto de 2019, la AAA compareció con su *Contestación a la Demanda*.[6]

Posteriormente, el 14 de septiembre de 2020, las partes presentaron el *Informe de Conferencia con Antelación a Juicio* (en adelante, ICAJ).[7] En lo pertinente, la señora Ortiz De Jesús sostuvo que cuando salió de la funeraria tropezó con un desnivel, lo cual

---

[3] *Id.*, a las págs.19-22.
[4] *Id.,* a las págs. 23-26.
[5] *Id.,* a las págs. 31-38.
[6] *Id.,* a las págs. 27-30.
[7] *Id.,* a las págs. 39-81.

ocasionó que se cayera y recibiera un fuerte impacto en su mano y muñeca izquierda. Argumentó que, como consecuencia de la caída, se tuvo que someter a una intervención quirúrgica y a varias sesiones de terapias. Indicó que su perito, el doctor William Acevedo, le otorgó un siete por ciento (7%) de impedimento total.

Por su parte, en el ICAJ, los apelantes esbozaron que la apelada tropezó en la acera, en la cual se ubica el registro de agua y el desnivel que provocó la caída. Adujo que la acera tenía rotos y el mantenimiento de esta le competía al Municipio de Carolina y que el arreglo de la tapa del contador era responsabilidad de la AAA.

Por su parte, la AAA esgrimió que la funeraria construyó o adquirió un local con estacionamiento para impedidos construido inadecuadamente sobre un área destinada para contadores de agua de la AAA. En tal sentido, citó lo dispuesto por la ley 79-2022[8] que establece que quien construya sobre un área de una utilidad de la AAA como contadores o registros de agua, debe cerciorarse de que la construcción esté al mismo nivel de los contadores y debe asegurarse de identificar esa área con pintura amarilla, así como delimitar el área para su visibilidad. Finalmente, el Municipio de Carolina adujo que el accidente ocurrió dentro de los predios de la propiedad de la Funeraria Campo Rico Memorial y no en la acera.

Así las cosas, el 7 de diciembre de 2020, la apelada presentó una *Moción de Desistimiento Parcial con Perjuicio*.[9] En esta, sostuvo que la señora Ortiz De Jesús llegó a unos acuerdos privados con la AAA y con el Municipio de Carolina y su aseguradora MAPFRE, por lo cual, solicitó el desistimiento con perjuicio de estas partes. Por su parte, el 10 de diciembre de 2020, los apelantes presentaron una *Moción en Oposición a Desistimiento Parcial con Perjuicio*.[10] El 10 de

---

[8] Ley para el Levantamiento de Registros y Alcantarillas al Nivel de Rodaje, Ley 79-2022, 9 LPRA sec. 2201 nota.
[9] Apéndice de la parte apelante, a las págs. 82-83.
[10] *Id.,* a las págs. 85-89.

diciembre de 2020, el TPI emitió una *Sentencia Parcial,* en la cual declaró *Ha Lugar* la moción de desistimiento y ordenó el archivo del pleito, con perjuicio en cuanto a la AAA, el Municipio de Carolina y MAPFRE.[11]

Tras varios asuntos procesales los cuales no son necesarios pormenorizar, el 3 y el 4 de agosto de 2021, se llevó a cabo el juicio en su fondo.[12] Durante el juicio, la apelada presentó el testimonio de los siguientes testigos: (i) doctor William Acevedo Rosario, (ii) señor José A. Ortiz De Jesús, (iii) señora Carmen Lydia Ortiz De Jesús; y el del (iv) señor Juan O. González Báez como testigo hostil. Además, conforme surge de la Minuta del juicio en su fondo,[13] la parte apelada presentó y se marcó la siguiente prueba documental:

Exhibit 1    Curriculum Vitae del Dr. William Acevedo Rosario
Exhibit 2    Informe Pericial
Exhibit 3    Expediente Hospital Auxilio Mutuo
Exhibit 4    Expediente médico por el Dr. Orlando Fernández
Exhibit 5    Certificación de copia expediente médico Hospital UPR Federico Trilla en Carolina
Exhibit 6-A Foto columna y estacionamiento
Exhibit 6-B Foto estacionamiento de impedido y guagua
Exhibit 6-C Foto entrada principal estacionamiento
Exhibit 6-D Foto inmovilizada de brazo
Exhibit 6-E Foto cabestrillo
Exhibit 6-F Foto de puntos de operación
Exhibit 6-G Foto de radiografía
Exhibit 6-H Foto cicatriz actual[14]

Por su parte, la parte apelante presentó el testimonio de los siguientes testigos: (i) su perito, el doctor José Enrique Suárez Castro, (ii) el ajustador, señor Héctor J. Santiago Rivera y el del (iii) señor Juan O. González Anglada. Asimismo, conforme la Minuta del juicio en su fondo, los apelantes marcaron los siguientes documentos como su prueba documental:

Exhibit 1    Informe accidente.
Exhibit 2    Curriculum Vitae del Dr. José Enrique Suárez Castro

---

[11] *Id.,* a la pág. 84.
[12] *Id.,* a las págs. 125-128.
[13] *Id.*
[14] *Id.,* a la pág. 125.

Exhibit 3     Informe pericial
Exhibit 4     Video del accidente (pendrive)
Exhibit 5     Querella de la policía 2018-8-316-3819
Exhibit 6.1  Foto estacionamiento de impedido
Exhibit 6.2  Foto entrada principal y estacionamientos
Exhibit 6.3  Foto estacionamientos
Exhibit 6.4  Foto estacionamiento impedido y contador de agua[15]

Sometido el caso, el foro primario concedió término a las partes para que presentaran sus correspondientes memorandos de derecho. Oportunamente, el 6 de septiembre de 2021, tanto los apelantes como la apelada presentaron sus correspondientes memorandos de derecho.[16] Así las cosas, el 15 de julio de 2022, el TPI emitió su *Sentencia.*[17] En esta, formuló las siguientes determinaciones de hechos:

1. La demandante Carmen Lydia Ortiz de Jesús es mayor de edad, soltera y vecina de Carolina, Puerto Rico.
2. EL 5 de agosto de 2018, ésta acudió a la Campo Rico Memorial ya que había fallecido una amistad.
3. Al llegar a dicha funeraria, la demandante estacionó su guagua hacia alfrente [sic] en el estacionamiento de impedidos cercano a la entrada de esta.
4. Una vez estacionada la guagua, la demandante se bajó por el lado del conductor y se dirigió por el lado izquierdo ubicado cerca a un muro de cemento de la entrada de la funeraria y continuó caminando hasta la entrada e interior de Campo Rico Memorial.
5. Ese día, en Campo Rico Memorial se encontraban familiares y amigos de la demandante Carmen Lydia Ortiz de Jesús.
6. El señor José Ortiz De Jesús es uno de los hermanos de la demandante Carmen Lydia Ortiz De Jesús que se encontraba allí.
7. Una hermana de la demandante que también se encontraba en Campo Rico Memorial le entregó un libro el cual la demandante decidió ir a guardar en su guagua.
8. La demandante procedió a salir por la entrada principal de Campo Rico Memorial, dobló hacia la izquierda para entrar al estacionamiento de impedidos dió [sic] unos pasos hacia su vehículo cuando tropezó cayendo al pavimento del estacionamiento de rodilla y sufriendo un impacto su mano izquierda.

---

[15] *Id.,* a la pág. 127.
[16] *Id.,* a las págs. 129-159.
[17] *Id.,* a las págs. 1-18.

9. Al momento del accidente sufrido el 5 de agosto de 2018, la demandante Carmen Lydia Ortiz de Jesús se encontraba con su hermano el señor José Ortiz De Jesús.

10. El señor José Ortiz De Jesús fue testigo ocular de la manera en que ocurrió el accidente de la demandante.

11. El señor José Ortiz De Jesús vió [sic] cuando su hermana se tropezó con un desnivel dentro del estacionamiento de impedidos de Campo Rico Memorial y procedió a ayudar a ésta.

12. El señor José Ortiz De Jesús identificó mediante fotografías mostradas la condición y área que provocó la caída de su hermana Carmen Lydia Ortiz de Jesús ubicándo [sic] la msima [sic] dentro de los predios del estacionamiento de impedidos de Campo Rico Memorial.

13. De igual manera, la demandante identificó el área que provocó el accidente dentro de los predios del estacionamiento de impedidos de Campo Rico Memorial.

14. El demandante previo al accidente no había visto el desnivel ni había pasado por el área en donde se tropezó.

15. La demandante al llegar a Campo Rico Memorial y bajarse de su guagua no pasó ni caminó por el área del estacionamiento de impedidos que tenía grietas y desnivel ya que caminó pegado al muro de cemento contiguo a la funeraria.

16. Las fotos suministradas y entradas en evidencia muestran que el estacionamiento de impedidos de Campo Rico Memorial tiene áreas con grietas, desniveles, y desnivel de cemento alrededor de contador de agua.

17. Una toma de video de cámaras de seguridad de Campo Rico Memorial entrado en evidencia por la parte demandada capta imágenes de parte del área exterior de la Campo Rico Memorial.

18. La toma del video muestra el momento que la demandante tropieza y sufre la caída; ésta se encontraba junto a su hermano José Ortiz De Jesús quien la auxilia.

19. El referido video solo captó imagenes [sic] de la parte superior de los cuerpos y no así parte baja de las extremidades ya que está tapada con un murito de cemento.

20. La demandante y el testigo señor José Ortiz De Jesús identificaron como el lugar en donde tropieza ésta dentro del estacionamiento de impedidos de Campo Rico Memorial.

21. Conforme los testimonios y prueba presentada, la caida [sic] de la demandante no ocurrió en la acera

sino en el estacionamiento de impedidos de Campo Rico Memorial.

22. Este Tribunal imparte entera credibilidad a la demandante Carmen Ortiz De Jesús y al señor José Ortiz De Jesús quienes estuvieron presente en el momento del accidente y observaron que fue lo que ocasionó el mismo.

23. La parte demandada Campo Rico Memorial no presentó testigos oculares ni presenciales de la caída de la demandante.

24. El área del estacionamiento de impedidos de la Funeraria Campo Rico Memorial se encontraba con desnivel de cemento y malas condiciones incluyendo alrededor del contador de agua que ubica dentro del estacionamiento.

25. La demandante tropezó a causa del desnivel, grietas y malas condiciones en que se encontraba el estacionamiento de impedidos Funeraria Campo Rico Memorial.

26. El señor José Ortiz De Jesús ayudó a su hermana Carmen Ortiz De Jesús a reincorporarse del piso y se mantuvo con ésta en lo que llegaba la ambulancia.

27. La Campo Rico Memorial es la dueña del área del estacionamiento de impedido[s] de la Funeraria Campo Rico Memorial en donde ocurrió el accidente de la demandante.

28. Los testigos de Campo Rico Memorial no entrevistaron a la demandante sobre los hechos del caso.

29. La responsabilidad del mantenimeinto [sic] y condiciones del estacionamiento de impedidos en donde ocurrió el accidente de la demandante lo es Campo Rico Memorial.

30. El deber de reparación del estacionamiento de impedidos donde ocurrió el accidente de la demandante es de Campo Rico Memorial.

31. El estado de desnivel, grietas y malas condiciones del estacionamiento de impedidos de Campo Rico Memorial constituye una condición de peligrosidad para los visitantes e impedidos de dicha funeraria.

32. El área del estacionamiento representaba un grave peligro a las personas que utilizaban esa área del estacionamiento para dirigirse a Campo Rico Memorial máxime si son personas con impedimentos.

33. El señor Juan O. González Báez es el Administrador de la Funeraria Campo Rico Memorial desde el año 2000.

34. Este declaró que el estacionamiento de la funeraria le pertenece a estos y pudo identificar las fotos presentadas por la parte demandante como áreas

que le pertenecen a la Funeraria Campo Rico Memorial.

35. El ajustador Héctor Santiago Rivera (testigo de Campo Rico Memoral [sic]) no estuvo presente el día de los hechos del caso.

36. El señor Héctor Santiago Rivera no entrevistó a la demandante para corroborar el lugar del accidente.

37. La demandada Campo Rico Memorial permitió que el área de estacionamiento de impedidos mantuviera una condición de peligrosidad sin avisos ni letreros que advirtiesen de dicha condición la cual hac[í]a previsible que ocurrieran caídas y accidentes como el sufrido por la demandante.

38. La condición peligrosa del estacionamiento de impedidos, la cual era conocida por Campo Rico Memorial y nada hicieron para corregirla, fue la causa próxima de la caída sufrida por la demandante y la que ocasionó una secuela de múltiples traumas al cuerpo de la demandante, así como daños emocionales.

39. La demandante al tropezar cayó de lado sufriendo un golpe en su rodilla izquierda y recibiendo el impacto mayor en su muñeca izquierda.

40. La demandante luego de la caída quedó en el suelo del estacionamiento y José Ortiz De Jesús la ayudó a recostarse contra un muro contiguo al estacionamiento.

41. La demandante sufrió graves daños en su muñeca izquierda y golpe en rodilla.

42. La demandante se encontraba aturdida y con un fuerte dolor en su muñeca izquierda por lo que tenía que apretarla fuertemente.

43. A Campo Rico Memorial llegó una ambulacia [sic] que trasladó a la demandante al hospital [sic] Hospital Universitario de Carolina Federico Trilla.

44. Una vez la demandante llega al Hospital Universitario de Carolina le realizaron estudios radiológicos y le informaron que tenía una fractura desplazada en su muñeca izquierda.

45. En dicho hospital le manipularon la mano lo que causó gran dolor. También le inmovilizaron la misma y le administraron medicamentos para el dolor y le recetaron ultracet y tramadol.

46. La demandante Carmen Lydia Ortiz De Jesús sufrió —Left Wrist Colles "Fracture" como consecuencia de la caída del 5 de agosto de 2018 en el estacionamiento de impedidos de Campo Rico Memorial.

47. Posterior, la demandante Carmen Lydia Ortiz De Jesús, fue evaluada y atendida por el cirujano-ortopeda Dr. Orlando Fernández en su oficina médica.

48. El 16 de agosto de 2018, la demandante Carmen Lydia Ortiz fue sometida por el Dr. Orlando Fernández a una intervención quirúrgica de su mano y muñeca izquierda en el Hospital Auxilio Mutuo.

49. La intervención quirúrgica consistió en un "open reduction and internal fixation" conocido como ORIF.

50. La cirugía requirió de colocación de placas y tornillos ortopédicos.

51. A la demandante le tomaron siete (7) puntos de su sutura y le fue inmovilizado el brazo.

52. La demandante tiene una cicatriz de carácter cosmético a causa de los puntos tomados.

53. La demandante al ser dada de alta de la cirugía de su mano izquierda le prescribieron medicamentos para el dolor y antibióticos.

54. La demandante a consecuencia del impacto y fractura de su mano izquierda estuvo imposibilitada de usar la misma mienstras [sic] estaba en recuperación.

55. Posterior a la cirugía de su mano izquierda, está [sic] requirió de ayuda para su diario vivir, para asearse y para hacer limpieza del hogar.

56. Esta sentía dolor, pérdida de fuerza, calambres, diminución de movimiento y adormecimiento en la misma.

57. La demandante mantuvo su brazo inmovilizado por más de treinta (30) días.

58. La demandante recibió dieciocho (18) secciones de terapias físicas y tratamiento de baños de parafina.

59. La demandante sufría de dolor e incomodidad ante el tratamiento de terapias.

60. La demandante a pesar de las terapias físicas de su muñeca ha continuado con adormecimiento y molestia en su mano y muñeca izquierda.

61. Hoy la demandante tiene limitaciones en el movimiento de su mano y muñeca izquierda.

62. La demandante tiene dificultad para cerrar su mano izquierda y agarrar objetos.

63. La demandante tiene una cicatriz de carácter cosmético a causa de los puntos tomados.

64. La demandante tiene una deuda por gastos médicos por la cantidad de de [sic] $7,560.24 relacionadas a tratamiento recibido a consecuencia del presente caso.

65. El perito de la parte demandante, el Dr. William Acevedo, evaluó a la demandante Carmen Lydia Ortiz De Jesús el 19 de diciembre de 2019.

66. Al momento de la evaluación, la demandante presentaba dolor en su muñeca izquierda y disminución del rango del movimiento secundario a la fractura y ORIF.

67. El perito Dr. William Acevedo, rindió un Informe Pericial, el cual fue admitido en evidencia, y en el mismo se concluyó que, de acuerdo con los criterios de las guías generalmente utilizada, la demandante posee un siete por ciento (7%) de impedimento total y permanente de sus funciones fisiológicas generales.

68. Este Tribunal le dio entero crédito al testimonio del Dr. William Acevedo y al porciento de incapacidad otorgado y máximo de beneficio alcanzado de la demandante.

69. Este Tribunal determina que en este caso existe certeza médica para relacionar directamente el impedimento de la demandante con el accidente del 5 de agosto de 2018.

70. La demandante ha sufrido y aún sufre angustias mentales dado al malestar físico, incomodidades, adormecimiento de su mano e inconvenientes en su diario vivir.

71. Todos estos daños físicos conllevaron seria[s] angustias mentales declaradas por la demandante que le afectaron su estado anímico, mental y diario vivir.

72. Los daños sufridos por la demandante Camen [sic] Lydia Ortiz de Jesús fue como consecuencia de la negligencia y falta de previsibilidad de la parte demandada Campo Rico Memorial y al mantener un área con una condición de peligrosidad.

73. Este Tribunal emite su determinación de negligencia e impone total responsabilidad de forma solidaria a las partes codemandadas Campo Rico Memorial y su aseguradora Cooperativa de Seguros Múltiples de los hechos ocurridos y por los cuales la demandante sufrió severos daños físicos y emocionales, a tenor con la prueba desfilada durante los días de juicio de este caso.[18]

A base de estas determinaciones de hechos, el foro primario declaró *Ha Lugar* la Demanda incoada por la señora Ortiz De Jesús y en consecuencia se les condenó a los apelantes la indemnización de cien mil dólares ($100,000.00) por concepto de daños físicos y cincuenta mil dólares ($50,000.00) por concepto de angustias mentales.

Insatisfechos con este dictamen, el 1 de agosto de 2022, los apelantes presentaron una *Moción de Reconsideración, Solicitando*

---

[18] *Id.,* a las págs. 3-8.

*Enmiendas y/o Determinaciones de Hechos Adicionales y Sobre Otros Extremos.*[19] Por su parte, el 11 de agosto de 2022, la apelada presentó la *Moción en Oposición* a *Moción de Reconsideración, Solicitud de Enmiendas y/o Determinaciones de Hechos Adicionales y Sobre Otros Extremos.*[20] Evaluados los escritos presentados por las partes, el 16 de agosto de 2022, notificada el 17 de agosto de 2022, el TPI emitió una *Resolución* declarando No Ha Lugar la moción de reconsideración presentada por los apelantes.[21]

Aun inconforme, el 16 septiembre de 2022, los apelantes comparecieron ante esta Curia mediante un recurso de *Apelación* y formularon los siguientes señalamientos de error.

> ERRÓ EL TPI AL OMITIR DETERMINACIONES DE HECHOS QUE SON ESENCIALES PARA RESOLVER EL PRESENTE LITIGIO Y ADJUDICAR NEGLIGENCIA A CAMPO RICO MEMORIAL Y RESPONSABILIZARLA ANTE LA DEMANDANTE.

> ERRÓ EL TPI AL DEJAR DE IMPUTAR A LA DEMANDANTE LA PORCIÓN DE RESPONSABILIDAD DE LOS CO-CAUSANTES LIBERADOS Y AL NO HACER UN PRORRATEO DE RESPONSABILIADAD QUE INCLUYA LA NEGLIGENCIA DE LA DEMANDANTE.

Como parte del apéndice del recurso, los apelantes incluyeron una transcripción de la prueba oral de este pleito.[22] Así pues, el 16 de septiembre de 2022, los apelantes presentaron una *Moción Solicitando la Elevación de Prueba Electrónica y Sobre Otros Extremos*. El 27 de septiembre de 2022, emitimos una *Resolución* en la cual le requerimos al TPI que nos remitiera en calidad de préstamo, la evidencia electrónica presentada en el juicio.

Luego de varios asuntos procesales, el 3 de noviembre de 2022, la apelada presentó una *Urgente Moción en Torno al Incumplimiento con el Reglamento del Tribunal de Apelaciones y Solicitando que se Ordene a la Parte Demandada-Apelante que*

---

[19] *Id.,* a las págs. 166-182.
[20] Apéndice de la parte apelada, a las págs. 1-6.
[21] Apéndice de la parte apelante, a las págs. 183-184.
[22] *Id.,* a las págs. 191-450.

*Produzca la Totalidad de la Transcripción de la Prueba Oral y Pr[ó]rroga*. En síntesis, planteó que la transcripción de la prueba oral que presentó la parte apelante en su apéndice estaba incompleta y tenía varias incongruencias. En específico, adujo que dicha transcripción omitió la porción del juicio que se llevó a cabo en la mañana del 3 de agosto de 2021, en la cual testificó el perito de la señora Ortiz De Jesús, el doctor Acevedo Rosario.

En respuesta a estas alegaciones, el 9 de noviembre de 2022, los apelantes presentaron la *Moción en Torno a Solicitud Urgente y Sobre Otros Extremos*. En ella, aclararon que la razón por la cual no estaba la porción del juicio de la mañana del 3 de agosto de 2021 respondía a que el TPI omitió grabar esa parte de la vista. Juntamente con esta moción, los apelantes presentaron nuevamente la transcripción de la prueba oral junto a una certificación de la taquígrafa de record. Por otro lado, el 14 de noviembre de 2022, la apelada presentó una *Réplica a Moción en Torno a solicitud Urgente*. En síntesis, esgrimió que existen diferencias entre la primera transcripción presentada en el apéndice de los apelantes y la segunda transcripción presentada en la *Moción en Torno a Solicitud Urgente y Sobre Otros Extremos*. Subsiguientemente, el 17 de noviembre de 2022, el apelante presentó su *Oposición a Apelación*.

El 1 de diciembre de 2022, tras haber examinado una certificación presentada por la Coordinadora de Grabación del TPI le ordenamos a las partes a que se expresaran sobre sí a la luz de los errores señalados en el recurso, el testimonio que no fue preservado por el TPI era necesario para la adjudicación de la controversia. El 6 de diciembre de 2022, el apelado presentó una *Moción en Cumplimiento de Orden*, esbozó que dicha prueba oral era necesaria, pero de no poderse obtener, esta Curia debía cerciorarse de que, en nuestra función revisora, solamente tengamos en cuenta

los informes periciales sometidos y no los testimonios de los peritos. Por su parte, el 7 de diciembre de 2022, los apelantes adujeron que no era necesario el testimonio del doctor Acevedo Rosario para resolver la apelación.

Con el beneficio de la comparecencia de las partes, las dos transcripciones de la prueba oral presentada,[23] y la totalidad del expediente de autos, nos disponemos a resolver el recurso que tenemos a ante nuestra consideración.

II

### A. Recurso de Apelación

La Regla 52.2(a) de las Reglas de Procedimiento Civil[24], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable[25]. La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[26] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.
>
> En aquellos casos en que el Estado Libre Asociado de Puerto Rico, sus funcionarios y funcionarias, o una de sus instrumentalidades que no fuere una corporación pública, o en que los Municipios de Puerto Rico o sus funcionarios y funcionarias sean parte en un pleito, el recurso de apelación se formalizará, por cualquier parte

---

[23] Es necesario aclarar que en el presente recurso se presentaron dos transcripciones de la prueba oral. Puesto a que la diferencia entre ambas no es sustancial, las estaremos acogiendo como parte del expediente. Sin embargo, nos estaremos refiriendo a la transcripción de la prueba oral que se anejó en el apéndice del recurso, al momento de hacer referencia a testimonios que surgieron en el juicio.

[24] 32 LPRA Ap. V, R. 52.2(a).

[25] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA,* 106 DPR 357, 360 (1977).

[26] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).

en el pleito que haya sido perjudicada por la sentencia, presentando un escrito de apelación dentro del término jurisdiccional de sesenta días, contados desde el archivo en autos de una copia de la notificación de la sentencia dictada por el tribunal apelado. [27]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación oportuna de una moción de reconsideración fundamentada.[28] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[29] Esto, a pesar de que se haya declarado la moción No Ha Lugar

### B. Las determinaciones de hechos y conclusiones de derecho en la sentencia

Conforme lo exige nuestro ordenamiento jurídico, las sentencias deben cumplir con ciertos requisitos de forma.[30] A tales efectos, la Regla 42.2 de Procedimiento Civil,[31] establece lo siguiente en cuanto la declaración de hechos probados y conclusiones de derecho:

> En todos los pleitos, el tribunal especificará los hechos probados, consignará separadamente sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda. Al conceder o denegar *injunction* interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución. Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. […]

En cuanto al concepto *determinaciones de hecho,* el tratadista Rafael Hernández Colón ha expresado que es una de las cuatro partes en las cuales se divide un documento que contiene una

---

[27] 4 LPRA Ap. XXII-B, R. 13 (A).
[28] 32 LPRA Ap. V, R. 47.
[29] *Id.*
[30] *Perez Vargas v. Off. Depot,* 203 DPR 687, 700 (2019).
[31] 32 LPRA Ap. V, R. 42.2.

sentencia.[32] En específico, el tratadista expresa que "[u]na vez recibida la prueba, el tribunal entra en un proceso para dirimir los conflictos que pueda haber, determinar la credibilidad de los testigos, determinar que documentos se tendrán por auténticos y determinar que hechos se tendrán por probados".[33] Realizadas estas determinaciones, le corresponde al tribunal ordenarlas de forma lógica y es a esto lo que se le conoce como determinaciones de hechos probados.[34]

Consonó con lo anterior, el Tribunal Supremo de Puerto Rico, citando al tratadista Hernández Colón, ha expresado que "las determinaciones de hechos probados que de ordinario se consignan en una sentencia no son más que el resultado del proceso adjudicativo al que se adentra un tribunal luego de celebrado el juicio en su fondo".[35] Asimismo, nuestro Máximo Foro ha expresado que " [p]ara poder descargar responsablemente nuestra función apelativa es necesario que los tribunales de instancia formulen las determinaciones de hecho de fundamentos de la decisión".[36] A su vez, nuestra máxima Curia ha resaltado la relevancia de las determinaciones de hechos de la siguiente manera:

> Las determinaciones de hecho en una sentencia de un tribunal de instancia responden a unos axiomas elementales vinculados con la difícil tarea de hacer justicia, a saber, los hechos determinan el derecho y, para juzgar hay que conocer. Una sentencia bien explicada, (tanto en sus hechos como en sus fundamentos de derecho), tiende a reducir el riesgo de arbitrariedad judicial, evita la sensación de elemento misterioso, obliga al juez a penetrar en un proceso reflexivo de inteligencia y, promueve un mejor entendimiento y respeto hacia los tribunales. También, ayuda a los abogados y partes afectadas, a entender el porqué de la decisión. Así, estos pueden, mejor informados, decidir si la revisan o la aceptan. La experiencia nos enseña que, dentro de ciertos límites, puede discreparse de una apreciación fáctica o que hay espacio para una interpretación jurídica distinta; lo

---

[32] R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, a la pág. 419.
[33] *Id.*
[34] *Id.*
[35] *Perez Vargas v. Off. Depot, supra*, a la pág. 702.
[36] *Torres García v. Dávila Diaz y otros*, 140 DPR 83, 86, (1996).

importante es evitar que prevalezcan dictámenes judiciales caprichosos faltos de fundamentos o hijos de la irreflexión. Más allá de esa instancia, una sentencia explicada y fundamentada, facilita la función revisora del foro apelativo, al presentarle el cuadro fáctico claro que nutrió la conciencia judicial del juzgador. Torres García v. Dávila Díaz, 96 CDT 19, res. en 22 de febrero de 1996; Sucn. Osorio v. Osorio, 102 D.P.R. 249, 251 (1974); Firpi v. Pan American World Airways. Inc., 89 D.P.R. 197, 218 (1963). Véase, además, Wright & Miller, 9A Federal Practice & Procedure: Civil, sec. 2571 (1995). Finalmente, promueve la uniformidad, pues la formulación de razones y fundamentos estimula que, en la dinámica decisoria, los jueces utilicemos criterios análogos para situaciones similares o sustancialmente parecidas.[37]

Por otro lado, una vez formuladas las determinaciones de hechos, el tribunal elaborará sus conclusiones de derecho, en la cual consignará los principios o normas de derecho aplicable, tales como leyes, jurisprudencia y autoridades pertinentes.[38] En varias instancias, el Tribunal Supremo de Puerto Rico ha expresado que puede resultar problemático diferenciar lo que constituye una determinación de hecho y una conclusión de derecho.[39] Sobre esto, la jurisprudencia ha manifestado que:

> [c]ualquie[r] deducción o inferencia de un hecho probado, que no represente una deducción o una inferencia de tal hecho, sino que represente la aplicación de un principio de ley, de un razonamiento lógico o de una opinión jurídica al hecho probado, o al hecho deducido o inferido del hecho probado, se considerará una conclusión de derecho.[40]

En ese sentido, "las determinaciones de hecho establecen qué fue lo que pasó, mientras que en las conclusiones de derecho se determina el significado jurídico de esos hechos conforme a determinada norma legal".[41]

## C. Daños y Perjuicios

El Artículo 1802 del Código Civil de Puerto Rico le impone el deber a toda persona de no causar daño a otra mediante un acto u

---

[37] *Andino v. Topeka, Inc.,* 142 DPR 933, 938-939 (1997).
[38] Hernández Colón, *op. cit.* a la pág. 420.
[39] *Lugo Montalvo v. Sol Melia Vacation,* 194 DPR 209, 226 (2015).
[40] *Id.* (Énfasis suprimido y citas omitidas)
[41] *Id.*

omisión culposo o negligente.[42] A su vez, establece la obligación de reparar daños causados en los que medie culpa o negligencia.[43] A la luz de lo anterior, para que surja la responsabilidad civil extracontractual al amparo de dicha disposición deben concurrir los siguientes tres (3) elementos: (i) un daño, (ii) una acción u omisión negligente o culposa y, (iii) la correspondiente relación causal entre ambos.[44] Así, las cosas la culpa o negligencia es la falta del debido cuidado al no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente y razonable habría previsto en las mismas circunstancias.[45] En específico, lo importante es que se pueda prever en forma general, las consecuencias de determinada acción o inacción.[46] Así, pues, el concepto *culpa* del Artículo 1802, es infinitamente abarcador, tanto como lo suele ser la conducta humana, por cuanto ésta se analiza con amplitud de criterio.[47]

Bajo el crisol doctrinario, la relación causal que debe existir entre la acción u omisión culposa o negligente y el daño se rige en nuestro ordenamiento por la doctrina de la causalidad adecuada, que propone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general".[48] Cónsono con lo anterior, ello implica que la ocurrencia del daño "era previsible dentro del curso normal de los acontecimientos".[49] De modo que, el daño es

---

[42] 31 LPRA § 5141, Art. 1802. El Código Civil de Puerto Rico de 1930 fue derogado por el Código Civil de Puerto Rico de 2020 aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado, por ser la ley vigente y aplicable a la controversia que nos ocupa.
[43] *Id.*
[44] *Rivera v. S.L.G. Díaz*, 165 DPR 408, 421 (2005). *Toro Aponte v. ELA*, 142 DPR 464 (1997).
[45] *Rivera v. S.L.G. Díaz, Id. Ramos v. Carlo*, 85 DPR 353, 358 (1962). *Toro Aponte v. ELA, Id.*
[46] *Montalvo v. Cruz*, 144 DPR 748, 756 (1998).
[47] *Rivera v. S.L.G. Díaz, supra*, 422. *Toro Aponte v. ELA, supra. Santini Rivera v. Serv. Air, Inc.*, 137 DPR 1, 8 (1994). *Reyes v. Sucn. Sánchez Soto*, 98 DPR 305, 310-311 (1970).
[48] *Colón Ramírez v. Televicentro de P.R.*, 175 DPR 690, 707 (2009).
[49] *López v. Porrata Doria*, 169 DPR 135, 152 (2006).

"todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra".[50] Consecuentemente, recae sobre la parte que solicita ser indemnizada el deber de establecer, mediante preponderancia de la prueba, todos los elementos de la causa de acción por daños y perjuicios.[51]

Por otro lado, se ha reiterado que cuando el daño sufrido por una persona es a consecuencia de la negligencia de más de un causante, todos responden solidariamente a la persona perjudicada por los daños que estos cometieron.[52] Claro está, la responsabilidad de estos impuesta por el tribunal se distribuirá por los respectivos grados de negligencia.[53]

Del mismo modo, nuestro ordenamiento le reconoce la potestad a la parte perjudicada de poder renunciar a su reclamación con respecto a alguno de los cocausantes de su daño mediante un acuerdo de transacción, pero ello no necesariamente significa el relevo de los restantes codemandados si esto último no está dispuesto claramente en el acuerdo.[54] Por tal motivo, en estas circunstancias, la persona agraviada puede continuar con su reclamación contra los demás codemandados.[55]

Finalmente, en nuestro ordenamiento se ha reiterado la norma de que "cuando un comerciante mantiene abierto al público un lugar, con el propósito de llevar a cabo actividades económicas para su beneficio, este asume el deber de mantener ese espacio en condiciones óptimas de seguridad que evite que un cliente sufra daño alguno".[56] Así pues, "el dueño u operador debe de ejercer un cuidado razonable para mantener la seguridad de las áreas

---

[50] *Id.*, 151.
[51] *SLG Colón-Rivas v. ELA*, 196 DPR 855, 864 (2016).
[52] *Pérez et al. v. Lares Medical et al.* 207 DPR 965, 979 (2021).
[53] *Ramos v. Caparra Dairy, Inc.,* 116 DPR 60, 62 (1986).
[54] *Fonseca v. Hosp. HIMA*, 184 DPR 281, 291 (2012).
[55] *Id.*
[56] *Camacho Rivera v. Richard Mitchell, Inc.,* 202 DPR 34, 42 (2019).

accesibles al público, para que, de ese modo, se evite que sus clientes sufran algún daño".[57] De igual forma, "los propietarios de establecimientos comerciales son responsables por los daños ocasionados a causa de aquellas *condiciones peligrosas existentes*, siempre que éstas sean conocidas por los propietarios o su conocimiento le sea imputable".[58]

### D. Apreciación de la Prueba, Deferencia Judicial y Discreción Judicial

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia.[59] Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales.[60] Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos.[61] En ese sentido, y como regla general, no debemos intervenir con las determinaciones que este haya efectuado en virtud de la presunción de corrección de la que gozan.[62]

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo

---

[57] *Id.*, a las págs. 42–43, citando a *Colón y otros v. K-Mart y otros*, 154 DPR 510, 518 (2001). (Énfasis suprimido).

[58] *Id.* (Énfasis suprimido).

[59] *Pueblo v. Pérez Núñez*, 208 DPR 511, 514 (2022). *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987). *Trinidad v. Chade*, 153 DPR 280, 289 (2001).

[60] *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021). *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013). *Pueblo v. Santiago*, 176 DPR 133, 148 (2009). *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

[61] *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009). *Trinidad v. Chade, supra*, a la pág. 291.

[62] *Pueblo v. Pérez Núñez, supra*, a la pág. 529.

justifique.[63] El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna.[64] En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[65]

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida.[66] Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro.[67]

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el

---

[63] *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996). *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994). *Rivera Pérez v. Cruz Corchado,* 119 DPR 8, 14 (1987). S*ierra v. Tribunal Superior,* 81 DPR 554, 572 (1959).
[64] *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013).
[65] *González Hernández v. González Hernández,* 181 DPR 746, 776 (2011). *Ramírez Ferrer v. Conagra Foods PR,* 175 DPR 799, 811 (2009). *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000). *Pueblo v. Irizarry,* 156 DPR 780, 789 (2002). *Pueblo v. Maisonave,* 129 DPR 49, 62-63 (1991).
[66] *Dávila Nieves v. Meléndez Marín, supra,* a la pág. 772.
[67] *Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018). *Pueblo v. Irizarry, supra.*

tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos.[68]

Ahora bien, cabe destacar que el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*.[69] Por tanto, ante dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta".[70]

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso.[71] Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas.[72]

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción.[73] Un tribunal de justicia incurre en un abuso de discreción: (i) cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión

---

[68] *Santiago Ortiz v. Real Legacy et al.*, *supra*. *Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020). *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra,* 63. *González Hernández v. González Hernández, supra*, 777. *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009). *Pueblo v. Irizarry, supra. Pueblo v. Acevedo Estrada, supra.*
[69] *González Hernández v. González* Hernández, *supra,* a la pág. 777.
[70] *Id.*
[71] S*ierra v. Tribunal Superior, supra.*
[72] *Pueblo v. Pérez Núñez, supra.*
[73] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013). *Pueblo v. Rivera Santiago,* 176 DPR 559, 580 (2009).

exclusivamente en éste; o, (iii) cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez los sopesa y calibra livianamente.[74]

III

En el caso ante nuestra consideración, los apelantes nos plantean que el foro primario erró tras presuntamente omitir determinaciones de hechos que son esenciales para resolver la presente controversia y también, al adjudicarle negligencia y responsabilidad ante la apelada. Además, esbozan que, de igual forma, el foro primario incidió al dejar de imputar a la señora Ortiz De Jesús, la porción de responsabilidad de los codemandados, contra quienes se emitió una *Sentencia Parcial* de desistimiento, con perjuicio, y por no haber realizado un prorrateo al momento de imponer la responsabilidad, que incluyera la presunta negligencia de la demandante. Por considerar que los errores son susceptibles de ser discutidos en conjunto, obraremos como tal.

De entrada, es preciso resaltar que, las determinaciones de hechos que le corresponde hacer al TPI en una sentencia, es un ejercicio fundado en su discreción judicial basado en su apreciación de la prueba.[75] Por tal motivo, como foro revisor, a no ser que se encuentren presente los elementos de pasión, prejuicio, parcialidad o error manifiesto, estaremos impedidos de intervenir.

En su recurso, los apelantes enumeran una serie de determinaciones de hechos, que, a su juicio, están erradas, a saber, las determinaciones 3, 4, 7, 8, 10, 11, 14, 15, 20, 21, 28, 31, 32, 62, 64 y 72. Ahora bien, conforme surge del expediente ante nuestra consideración, las determinaciones, 3, 4, 7, 8, 14, 15, 62 y 64 surgen del testimonio de la propia agraviada, la señora Ortiz De Jesús.[76]

---

[74] *Pueblo v. Rivera Santiago, supra.*

[75] *Semidey et al. v. Fcia. Belmonte et al.*, 2023 TSPR 15, 211 DPR__ (2023), a las págs. 12-13.

[76] Véase la transcripción de la prueba oral en el apéndice del recurso (en adelante, TPO), a las págs. 271-298.

Por otro lado, las determinaciones 10 y 11 surgen del testimonio de su hermano, el señor José Ortiz De Jesús.[77] Igualmente, las determinaciones 20 y 21 se fundamentan en el testimonio de estos dos testigos.[78] Asimismo, la determinación de hecho número 28 surgió de varios testimonios ofrecidos en el juicio.[79] En tal sentido, el foro primario escuchó esta prueba y les concedió credibilidad a estas partes, incorporándolas así a sus determinaciones de hechos.[80]

En cuanto a las determinaciones, 31, 32 y 72, las mismas, en efecto son conclusiones de derecho. No obstante, juzgamos que las mismas están sustentadas en la prueba desfilada en el juicio. En fin, habiendo examinado minuciosamente la transcripción de la prueba oral, no encontramos razón por la cual debamos intervenir con las determinaciones de hechos realizadas por el foro primario en esta controversia.

Por otro lado, es necesario destacar que en este caso, a base de la prueba que se presentó, se estableció que la caída de la señora Ortiz De Jesús ocurrió dentro de la propiedad de la Funeraria Campo Rico Memorial, espacio que, dentro de un estacionamiento de personas impedidas, tenía un hueco en el cual se encontraba un registro de agua.[81] Nuestra jurisprudencia ha reiterado en varias ocasiones que los propietarios de entidades comerciales son responsable de los daños ocasionados a causa de las condiciones

---

[77] TPO, a las págs. 223-246.
[78] TPO, a la pág. 254, líneas 9-15, en donde el señor José Ortiz De Jesús identifica que el desnivel que ocasionó la caída se encontraba dentro del estacionamiento y, véase, además, la pág. 355, líneas 10-17, donde la señora Ortiz De Jesús explica que ella se cayó en el área del estacionamiento.
[79] TPO, a las págs. 421-423, en el cual el administrador de la funeraria, el señor José Juan González Anglada reconoce que no se comunicó con la apelada ya que así lo exige el protocolo y que en el Aviso de Accidente de la funeraria no consta la firma de ningún personal de dicha institución.
[80] De hecho, el foro primario determinó concederle dicha credibilidad en la propia sentencia apelada, en la determinación de hechos número 22, la cual lee como sigue: "[e]ste Tribunal imparte entera credibilidad a la demandante Carmen Ortiz De Jesús y al señor José Ortiz De Jesús quienes estuvieron presente en el momento del accidente y observaron que fue lo que ocasionó el mismo". Véase el apéndice del recurso, a la pág. 4.
[81] TPO, a la pág. 254, líneas 9-15; pág. 355, líneas 10-17.

peligrosas existentes siempre que estas sean conocidas por dichos propietarios.[82]

Conforme surge del expediente, el señor Juan José González Anglada, quien es el administrador de la Funeraria Campo Rico Memorial, manifestó que tenía conocimiento del desnivel que causó la caída de la apelada y que no habían realizado ningún tipo de mantenimiento a dicha área.[83] Asimismo, tal y como reseñáramos, la prueba que tuvo el foro primario ante sí fue suficiente para que se determinara que existían condiciones de peligrosidad en el estacionamiento de la funeraria.[84]

A base de estas circunstancias, el TPI concluyó que los apelantes eran los **únicos** responsables de los daños sufridos por la señora Ortiz De Jesús, toda vez no se pudo demostrar el grado de responsabilidad del resto de los cocausantes liberados. Si bien es cierto que nuestro ordenamiento reconoce el derecho a prorrateo por parte del cocausante de un daño a otro cocausante, **es necesario que se le adjudique algún grado de responsabilidad al otro cocausante**. En este caso, el foro primario razonó que quien **único** respondía por los daños de la apelada eran los apelantes.

Por último, insistimos en que esta Curia, como foro revisor, únicamente tiene facultad para intervenir en la apreciación de la prueba que ejerce el TPI en caso de que haya mediado error manifiesto, pasión, prejuicio o parcialidad,[85] o, en caso de que la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble.[86] En ausencia total de cualquiera de las circunstancias que nos permitirían intervenir en

---

[82] *Camacho Rivera v. Richard Mitchell, Inc., supra* a la pág. 43.
[83] TPO, a las págs. 209-215.
[84] Véase las determinaciones de hechos número 31, 32, 37 y 38 en el apéndice del recurso, a las págs. 5-6.
[85] *González Hernández v. González Hernández, supra.*
[86] *Pueblo v. Martínez Landrón, supra*, citando a *Pueblo v. Maisonave, supra*, a la pág. 63.

la apreciación de la prueba realizada por el foro de instancia, confirmamos el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la Sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones